IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

    Plaintiff

    v.

BOBBY CRUZ CARRILLO
JOSE MIGUEL ORTIZ MORALES
JOSE RUIZ DAVILA

    Defendants

CRIMINAL NO. 05-007 (CCC)

### **REPORT AND RECOMMENDATION**

A controlled delivery of a marijuana package led to the arrest of defendants, and, a subsequent search of one of their vehicles yielded various weapons. Defendants now move to suppress the incriminating evidence. First, they contend that the warrantless search and seizure of the marijuana package was unlawful. Next, they contend that the warrantless search and seizure of the vehicle in question from a privately owned parking garage was also unlawful. Having considered the facts of this case, as well as the applicable Fourth Amendment jurisprudence, the Court finds no merit in defendants' arguments. Consequently, their suppression motions (Docket Nos. 44, 49, 50, 51, 55) must be **DENIED.**

### **Factual Background**[1]

On December 28, 2004, an unidentified Hispanic male brought two packages to the DHL facility at the Orlando, Florida airport. The DHL employee who attended said individual became suspicious when he changed the description of the packages' contents from "paint samples" to "Christmas gifts". He thus asked the subject for permission to inspect the packages. The unidentified subject acquiesced, and then abandoned the DHL facility quickly. The DHL employee then opened the boxes and found marijuana.

---

[1] These facts are taken from the testimonies of Special Agent Julio Santiago, Agent José A. Cruz Camacho, and Officer Tammi Underwood, which the Court finds entirely credible, as well as consistent with one another.

**CRIMINAL NO. 05-007 (CCC)**                2

Afterwards, Police officer Tammi Underwood Edwards was contacted and arrived at the DHL facility. Upon confirming the boxes' contents, officer Underwood took control of the packages. Then, based on the information contained in the waybill, she attempted to make contact with the recipient of the packages. She was successful, and arrangements for delivery of the packages to their destination in Puerto Rico were made with a person by the name of Carlos. At the same time, Officer Underwood had informed the U.S. Postal Service of what was occurring.

On January 5, 2005 a team of U.S. Postal Inspectors and task force agents from the Puerto Rico police effected the controlled delivery of the repackaged marijuana at the Matadero Sector of Puerto Nuevo. U.S. Postal Inspector Reldys Torres masqueraded as a postal carrier who would deliver the boxes. Meanwhile, Special Agent Julio M. Santiago, and other task force agents set up surveillance in the area, prior to Torres' arrival.

Santiago observed a Black Honda with tinted glass parked in the vicinity. He then saw a golden colored Chevy parked in front of PPG Industries. Agent Torres arrived at the scene, and defendant Bobby Cruz Carrillo got out of the gold Chevy and walked towards Torres' vehicle. Torres proceeded to give Cruz Carrillo the packages. At the same time Cruz Carrillo was talking on his cellular telephone. Next, codefendant José Miguel Ortíz Morales walked down the street towards Cruz Carrillo, talking to him. At this was happening, the officers shouted "police" and proceeded to arrest Cruz Carrillo. Ortíz Morales proceeded to run and get into the black Honda. As he ran, P.R.P.D. officer Cruz Camacho noticed that he had a black gun in his waistband.

The black Honda then sped away. The law enforcement officers proceeded to pursue the car, and did not lose sight of the same. The Honda then entered the Puerto Rico Telephone parking garage. The officers followed inside the garage. At the fifth floor, the Honda was parked and the officers saw co-defendants Ortíz Morales and José Ruiz Dávila step out of the car. Both were arrested and frisked. No weapons were found on their persons. Keys to the Black Honda were found inside co-defendant Ruiz Dávila's pocket.

The Black Honda was taken to the police station at the Luis Muñoz Marín airport. An inventory search of the same yielded a pistol, and other weapons and ammunitions.

CRIMINAL NO. 05-007 (CCC)                    3

**Legal Analysis**

    (i)    <u>Initial Search of the DHL Packages</u>

Defendants contend that a search warrant was required to inspect the DHL packages at the Orlando airport. This argument fails. Here, the unidentified Hispanic male abandoned the packages as he left the DHL office. More so, the packages had not yet been cleared for shipment, nor had payment been made. A warrantless search and seizure of abandoned property is not a violation of the Fourth Amendment. <u>United States v. Sealey</u>, 30 F. 3d 7, 10 (1st Cir. 1994) (citing <u>Abel v. United States</u>, 362 U.S. 217, 241 (1959)). When an individual abandons property, he forfeits any reasonable expectation of privacy in it, and consequently police may search it without a warrant. <u>Id</u>. (citing <u>United States v. Lewis</u>, 921 F. 2d 1294, 1302 (D.C. Cir. 1990)). Thus, the search of the DHL packages was legal.

    (ii)    <u>Probable Cause to Arrest Defendants</u>

Following receipt of the controlled delivery packages by co-defendant Cruz Carrillo, there is no doubt that the law enforcement officers had probable cause to arrest him at the time.

The Court also finds that there was probable cause to arrest co-defendants Ortíz Morales and Ruíz Dávila. "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime". <u>United States v. Jones</u>, __F. 3d __, 2005 WL 3454678 * 5 (1st Cir. 2005). Here, prior to Cruz Carrillo's arrest, the law enforcement officers saw the Black Honda parked near where the delivery would occur. They also saw co-defendant Ortíz Morales walk towards him and talk to him. When Ortíz Morales saw Cruz Carrillo being arrested, he ran away and got into the Black Honda which fled the scene. A weapon was visible in his waist. Following a pursuit, the officers saw Ortíz Morales and Ruiz Dávila exit the Black Honda at the fifth level of the PRT parking. These facts and circumstances, when considered in their totality, inescapably lead a reasonably prudent person to believe that Ortíz Morales and Ruiz Dávila were involved in the same criminal venture with Cruz Carrillo.

**CRIMINAL NO. 05-007 (CCC)**               4

    (iii)    <u>Seizure of the Black Honda</u>[2]

Defendants contend that because the Black Honda was parked inside a privately owned parking garage, a warrant was required before it was removed. This argument also fails. The Supreme Court has upheld the warrantless seizure of an automobile from a private parking lot where there is probable cause that the same has been used to further a drug offense. <u>See</u> <u>Florida v. White</u>, 526 U.S. 559, 566 (1999); <u>see also</u> <u>United States v. Pappas</u>, 600 F. 2d 300, 305 (1st Cir. 1979) (warrantless seizure of car in private common parking lot upheld). Here, there was probable cause to seize the vehicle. Based on the same reasons that probable cause existed to arrest Ortíz Morales and Ruiz Dávila, the Court finds there was also probable cause to believe that the Black Honda was to be used for the transportation of the drugs, hence forfeitable under 21 U.S.C. § 881 (a)(4). Officer Cruz Camacho indeed stated that the reason he took the vehicle was because it had been used during the drug transaction.

    (iv)    <u>Inventory Search</u>

Defendants contend that the weapon found inside the black Honda must be suppressed because established state procedures for inventorying were not followed. This final argument also fails. Officer Cruz Camacho testified that he took the vehicle to the police station at Luis Muñoz Marin Airport for an inventory. More so, an inventory was indeed made. <u>See</u> Suppression Hearing Exhibit 1. An officer's failure to technically follow inventory form procedures does not invalidate an otherwise lawful inventory search. <u>United States v. Trullo</u>, 790 F. 2d 205, 206 (1st Cir. 1986).

More so, as discussed earlier, there was probable cause to seize the vehicle which was to be used as a mean to transport the drugs in question. Thus, once impounded, an inventory search would nonetheless have ensued, and the weapons inevitably found. <u>See</u> <u>United States v. Zapata</u>, 18 F. 3d 971, 978-979 (1st Cir. 1994).

---

[2] Ms. Carmen Avilés, a security officer at PRT, and a defense witness, testified that on the date in question she never saw a black Honda go into the PRT garage through her gate, the rear one. This testimony, however, does not in any way alter the facts, as the black Honda was indeed found in the PRT garage, close to where Ortíz Morales and Ruiz Dávila were arrested.

**CRIMINAL NO. 05-007 (CCC)**                5

## Conclusion

Based on the aforementioned, the Court concludes that the initial search of the marijuana packages was lawful, and that, subsequently, law enforcement officers had probable cause to arrest defendants and seize the black Honda. The inventory search of said vehicle was also valid. Consequently, the government may use at trial all evidence obtained during the arrests and search.

Under the provisions of 28 U.S.C. § 636 and Local Rule 72(d), District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED.**

In San Juan, Puerto Rico, this 28th day of December, 2005

*S/ Gustavo A. Gelpi*

**GUSTAVO A. GELPI**
United States Magistrate-Judge